IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Ash-har Quraishi, Marla Cichowski, and Sam Winslade, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 16-cv-1320 NAB |
| v. | )<br>) |
| St. Charles County, Missouri, et. al. | )<br>) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF COUNTY DEFENDANTS'
MOTION TO DISMISS COUNTS I, II, III, IV, V, AND VI
OF PLAINTIFFS' CIVIL RIGHTS COMPLAINT**

COME NOW St. Charles County, Missouri ("the County") and Officer Michael Anderson ("Officer Anderson"), collectively "County Defendants," and pursuant to Federal Rule of Civil Procedure 12(b)(6) move this Court to dismiss the claims made against them by Plaintiffs, and as grounds therefore state as follows:

**Statement of Relevant Facts**

Following the fatal shooting of Michael Brown in Ferguson, Missouri, on August 9, 2014, the Al Jazeera America television news network sent journalists, including Plaintiffs Ash-har Quraishi, Marla Cichowski, and Sam Winslade, to Ferguson to report on the ongoing protest activities and public outcry. ¶¶ 1, 2, 215.[1]  The St. Louis County Police had assumed overall command of the police response in Ferguson, ¶ 94, and requested assistance from the St. Charles County Regional SWAT Team in Ferguson, *see* ¶ 112.

---

[1] All paragraph references (e.g., ¶ 1) are references to Plaintiffs' Civil Rights Complaint (Doc. 1).  For purposes of this motion only, all of Plaintiffs' allegations are accepted as true.

1

On August 13, 2014, at 5:40 p.m., the St. Charles County Regional SWAT Team and the St. Louis County Police Department's Tactical Operations Unit went to the intersection of West Florissant Avenue and Canfield Drive, in Ferguson, Missouri, and established the northern perimeter of the protest zone.  ¶¶ 12, 16, 17.  That evening, the St. Charles County Regional SWAT Team moved north on West Florissant Avenue, ¶ 47, gave orders to disperse to protestors, and arrested individuals who did not comply with that order.  ¶¶ 255, 272, 293.

The Plaintiffs parked approximately four blocks north and one and a half blocks west of the St. Charles County Regional SWAT Team's initial location, at Highmont Drive and Gage Drive, and set up their equipment, including a video camera mounted on a tripod, along with a series of large, rectangular lights, also mounted on tripods.  ¶¶ 56, 69.  Plaintiffs began recording at 9:24 p.m.  ¶ 60.  A short time later, the Plaintiffs observed police officers a block and a half away, at the intersection of West Florissant Avenue and Highmont Drive, in their "Bearcat" armored vehicle.  ¶¶ 62, 12.  The SWAT Team's Synopsis of Events states that the Plaintiffs' "[l]ight was illuminating officers' position to the crowd and obstructing the officers' view . . . .  Request was made earlier verbally to press to extinguish light." ¶ 227 (emphasis omitted).

At 9:26 p.m., St. Charles County Deputy Michael Anderson fired a 40 mm CS "tear gas" round, which landed directly in front of the Plaintiffs.  ¶¶ 77, 83.  The Plaintiffs all ran from the area, Quraishi called 911, and Winslade called the Al Jazeera America Network Operations Center and asked them to call the St. Louis County Police.  ¶¶ 85, 93, 94.  The St. Charles County Regional SWAT Team Bearcat turned left onto Highmont and drove west to the area where Plaintiffs had set up their equipment.  ¶ 96.  Officers dismantled the lights by placing them on the ground, and aimed the video camera toward the ground.  ¶ 96, 133.  The officers in the Bearcat then continued west on Highmont toward the Plaintiffs, who came out of hiding to talk

2

to the officers. ¶¶ 97. 98.  According to Plaintiffs, the SWAT Team members demanded the three journalists get into the Bearcat. ¶ 99.  The Plaintiffs were returned to their equipment, packed up their equipment, and left the area, as they were ordered to do. ¶¶ 101, 102.

## Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint. *MM  Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).  Federal Rule of Civil Procedure 8(a) requires a short and plain statement of the facts showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  That pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal citations, quotation marks, and alteration omitted).  If a claim fails to allege one of the elements necessary for recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F. 3d 346, 355 (8th Cir. 2011).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, *556 U.S.* at 678 (citing *Bell Atlantic Corp.*, *v. Twombly*, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of entitlement to relief." *O'Grady v. City of Ballwin*, 866 F. Supp. 2d 1073, 1077 (E.D. Mo. 2012) (internal quotations and alteration omitted).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff" but a complaint must nonetheless "give the defendant fair notice of what the

3

plaintiff's claim is and the grounds upon which it rests." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U. S. at 555. Although courts must accept the factual allegations as true, they are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted approvingly by *Twombly*, 550 U.S. at 555); *see Iqbal*, 556 U. S. at 679. "A gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012).

# I. The claims against Officer Anderson, Counts I, III, V should be dismissed because Officer Anderson has been sued only in his official capacity, and there is no vicarious liability for a County for constitutional claims.

"Damage actions against government officials are subject to a heightened standard of pleading with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response . . . ." *Brown v. Frey*, 889 F.2d 159, 170 (8th Cir. 1989). In order to sue a public official in his individual capacity, a plaintiff must expressly and unambiguously state so in the pleading, otherwise it will be construed that the defendant is sued only in his official capacity. *Johnson v. Outboard Marine Corp.*, 172 F. 3d 531, 535 (8th Cir. 1999); *Egerdahl v. Hibbing Community College*, 72 F. 3d 615, 619 (8th Cir. 1995). "A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the *municipality's* liability for the alleged conduct." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. Feb. 18, 2016) (emphasis added); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *also Nix v. Norman*, 879 F. 2d 429, 433 (8th Cir. 1989).

4

The Complaint nowhere states that Officer Anderson is being sued in his individual or personal capacity. Because Counts I, III, and V, are against Officer Anderson in his official capacity, they practically seek to hold the County liable for the acts of its employee. However, a County or political subdivision may not be held vicariously liable under Section 1983 for the unconstitutional acts of its employees. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007); *see Johnson*, 172 F.3d at 535. Therefore, the constitutional claims against Officer Anderson – Counts I, III, and V – must be dismissed for failure to state a claim.

**II.    The First Amendment claims (counts I and II) should be dismissed because the Complaint fails to state a claim for violation of the First Amendment.**

Plaintiffs allege that their First Amendment rights allow them to gather information about matters of legitimate public concern, ¶ 214, and videotape police in a public place carrying out their duties, ¶ 216. Officer Anderson in no way prohibited Plaintiffs from either of those actions; Plaintiffs make no allegation that Officer Anderson's actions infringed on their First Amendment rights. Instead, Plaintiffs allege that "when Deputy Anderson tear gassed Quraishi, Cichowski and Winslade, he did so for the purpose of abridging Quraishi, Cichowski and Winslade's First Amendment rights by prohibiting them from videotaping the activities of the St. Charles County Regional SWAT Team." ¶ 229. But Plaintiffs fail to state a claim because there was no constitutional violation: they admit that "Even after Quraishi, Cichowski and Winslade fled the immediate area after being overcome by tear gas, Winslade's camera continued recording." ¶ 131.

Furthermore, Plaintiffs' complaint fails to state a claim because of its conclusory allegations. Plaintiffs acknowledge that, to show a First Amendment violation, they must show that Officer Anderson's actions were "for the purpose of abridging" Plaintiffs' First Amendment

5

rights. ¶ 229.  This is only possible if Officer Anderson knew they were exercising their First Amendment Rights.  Plaintiffs allege that "when Deputy Anderson tear gassed Quraishi, Cichowski and Winslade, he . . . knew that Quraishi, Cichowski and Winslade were journalists engaged in gathering and reporting information on a matter of legitimate public concern." ¶ 223. The allegation of what Officer Anderson "knew," however, is insufficient:  this Circuit has held that a "knew or should have known" allegation is not a fact entitled to an assumption of truth," but rather is an "unadorned accusation[]" in the complaint that must be "set aside" for purposes of a 12(b)(6) motion.  *Christiansen*, 674 F.3d at 938.  For each of these reasons, therefore, Count I should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

If this Court agrees that Count I fails to state a claim, Count II must also be dismissed. Count II claims that "[t]he failure of the St. Charles County Sheriff's Department to train the members of the St. Charles County Regional SWAT Team on responding to civil disturbances proximately led to the violations of Quraishi, Cichowski and Winslade's First Amendment rights, as alleged in Count I, above." ¶ 253; *see* ¶ 254.  However, the law is clear that if there is no underlying First Amendment violation, then there can be no claim for failure to train or an unconstitutional custom or policy.  *Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015); *see* ¶¶ 253, 258.

**III.   The Fourteenth Amendment claims (Counts III and IV) should be dismissed because the Complaint fails to state a claim for violation of the Fourteenth Amendment.**

Plaintiffs claim that "[t]he actions of Deputy Michael Anderson on August 13, 2014 in gassing Quraishi, Cichowski and Winslade . . . violated Quraishi, Cichowski and Winslade's

6

Fourteenth Amendment right to due process." ¶ 262.  Plaintiffs make insufficient factual allegations within Claims III and IV, and therefore those Counts should be dismissed.[2]

"To establish a substantive due process violation, a plaintiff must first show a deprivation of life, liberty, or property." *O'Grady*, 866 F. Supp. 2d at 1078.  Plaintiffs do not allege any particular deprivation that they suffered, and for that reason, they fail to state a claim.  In addition, "To establish a substantive due process violation, plaintiffs must show that the behavior of [the Officer] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 467 (8th Cir. 2010).  A substantive due process claim arises only in the "rare situation" in which there are "violations of personal rights so severe so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power." *Winslow v. Smith*, 696 F.3d 716, 736 (8th Cir. 2012) (internal alterations omitted).  "To be conscience shocking, the government action must be truly irrational, that is, something more than arbitrary, capricious, or in violation of state law." *Draper v. City of Festus, Mo.*, 782 F.3d 948, 953 (8th Cir. 2015) (internal quotation and alteration omitted).  "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).  Even accepting

---

[2] Plaintiffs do not specify their theory for violation of their Fourteenth Amendment right to due process, so the Complaint does not give County Defendants adequate notice of the allegations against them.  Nonetheless, to the extent that Plaintiffs attempt to claim a violation of their procedural due process rights, they fail to state such a claim.  *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) ("To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law.").

7

each of Plaintiffs' allegations as true, the actions of Officer Anderson fall far short of the "irrational," "conscience-shocking" standard required by law.

"To establish a violation, the plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015), *cert. denied sub nom. Hall v. Ramsey Cty., Minn.*, 136 S. Ct. 2379, 195 L. Ed. 2d 267 (2016). Here, Plaintiffs fail to identify—much less show a violation of—a "fundamental right" so "rooted in this Nation's history and tradition" that "neither liberty nor justice would exist if they were sacrificed." *Id.* "Nor does the Due Process Clause transform every tort committed by a state actor into a constitutional violation." *Fields v. Abbott*, 652 F.3d 886, 890 (8th Cir. 2011) (internal quotation marks omitted)

Importantly, the same act that forms the basis for this Fourteenth Amendment claim also forms the basis for Plaintiffs' Fourth Amendment claim. *Compare* ¶ 262 *with* ¶ 283. "The Supreme Court has instructed that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Jones v. Slay*, 61 F. Supp. 3d 806, 834 (E.D. Mo. 2014) (internal quotation marks and alteration omitted). Specifically, as to claims related to the seizure of a person, "such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Substantive due process," on the other hand, "is generally

8

limited to matters relating to a fundamental right, i.e., marriage, family, procreation, right to bodily integrity." *Salau v. Denton*, 139 F. Supp. 3d 989, 1004 (W.D. Mo. 2015).

The Complaint includes "little more than general assertions of harm, lacking elaboration as to the context of the alleged incidents or resulting injuries," and the pleading standard for a due process claim "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. The vague allegations set forth in [Plaintiffs'] complaint do not plausibly state a claim for a violation of [their] substantive due process rights." *Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d at 635 (internal quotation marks and citation omitted).

As with the First Amendment claim, if this Court agrees that Count III fails to state a claim for violation of the Fourteenth Amendment, Count IV must also be dismissed. Count IV claims that "[t]he failure of the St. Charles County Sheriff's Department to train the members of the St. Charles County Regional SWAT Team on responding to civil disturbances proximately led to the violations of Quraishi, Cichowski and Winslade's Fourteenth Amendment rights, as alleged in Count III, above." ¶ 270; *see* ¶ 271. However, the law is clear that if there is no underlying Fourth Amendment violation, then there can be no claim for failure to train or an unconstitutional custom or policy. *Davis*, 794 F.3d at 1014; *see* ¶¶ 270, 275. Count IV should be dismissed.

**IV.    The Fourth Amendment claims (Counts V and VI) should be dismissed because the Complaint fails to state a claim for violation of the Fourth Amendment.**

Plaintiffs claim that "When Deputy Anderson fired a 40 mm CS round from his grenade launcher directly at Quraishi, Cichowski and Winslade he intended to terminate or restrain their freedom to remain in their location and continue their newsgathering and reporting." ¶ 280. This, Plaintiffs claim, means that "Quraishi, Cichowski and Winslade were seized as that term is

9

used in the Fourteenth [sic] Amendment." ¶ 282. The law makes clear, however, that these allegations do not constitute a violation of the Fourth Amendment.

Instead, the Fourth Amendment is clear that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Here, Plaintiffs admit that, "[i]n fact, Quraishi, Cichowski and Winslade immediately fled the area." ¶ 281. They were, therefore, free to leave, and actually did so. Plaintiffs also admit several times that on August 13, 2014, citizens were given orders to disperse. ¶¶ 31, 36, 255, 272, 293. The Complaint nowhere alleges that the dispersal orders were illegal. Therefore, Plaintiffs' claim could only survive a motion under Rule 12(b)(6) if this Court were to determine that enforcing a lawful dispersal order constitutes an unconstitutional "seizure" under the Fourth Amendment. This is not the law. Because no Fourth Amendment violation can be said to have occurred, Plaintiffs' Count V has no merit and should be dismissed.

Once again, if this Court agrees that Count V fails to state a claim, Count VI must also be dismissed. Count VI claims that "[t]he failure of the St. Charles County Sheriff's Department to train the members of the St. Charles County Regional SWAT Team on responding to civil disturbances proximately led to the violations of Quraishi, Cichowski and Winslade's Fourth Amendment rights, as alleged in Count III [sic], above." ¶ 291; *see* ¶ 292. However, the law is clear that if there is no underlying Fourth Amendment violation, then there can be no claim for failure to train or an unconstitutional custom or policy. *Davis*, 794 F.3d at 1014; *see* ¶¶ 291, 296. Count VI should also be dismissed.

**V.     The claims against the County for a custom and practice or usage of constitutional violations and failure to train should be dismissed for failure to state a claim.**

Even if this Court determines that Plaintiffs have stated claims against Officer Anderson for violations of their First, Fourth, or Fourteenth Amendment rights, the accompanying claims against the County should still be dismissed[3] because Plaintiffs fail to allege a sufficient custom or practice that proximately led to the violation of Plaintiffs' constitutional rights.

   **a. Custom and Practice or Usage Claims**

The act that allegedly constituted a constitutional violation was Officer Anderson's deployment of one round of CS gas.  ¶¶ 217, 228, 229, 230.  This, along with other actions of the St. Charles County Regional SWAT Team on August 13, 2014, allegedly created a "custom and practice or usage" of constitutional violations.  ¶¶ 254, 258, 271, 275, 292, 296, 297.

However, Plaintiffs' allegations are insufficient to state a claim against the County for a policy or custom.  A County "may be subject to § 1983 liability only if it had a 'policy or custom' of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue.  There must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law.  To establish a [county]'s liability based on its failure to prevent misconduct by employees, the plaintiff must show that [county] officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 702-03

---

[3] Of course, if this Court dismisses any underlying constitutional claims against Officer Anderson, it must also dismiss the accompanying Count against the County:  "Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability." *Sanders v. City of Minneapolis, Minnesota*, 474 F.3d 523, 527 (8th Cir. 2007).

11

(E.D. Mo. 2012) (internal quotation marks and citation omitted). Custom or usage is alternatively demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; *and* (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (alterations omitted) (emphasis added).

There are no allegations that there was any prior pattern of unconstitutional conduct, nor are there any allegations that any County officials had knowledge of any prior incidents. Plaintiffs' "failure to include any allegations, reference, or language by which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom renders the complaint deficient. At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (internal quotation marks, alteration, and citation omitted). Because the Complaint is deficient, the custom and policy claims in Counts II, IV, and VI should be dismissed. *See Jiang v. Porter*, 156 F. Supp. 3d 996, 1008 (E.D. Mo. 2015) (dismissing plaintiff's claim for unconstitutional policy or custom because plaintiff's allegations were "mere legal conclusions" and plaintiff failed to "allege facts which would support the existence of an unconstitutional policy or custom").

### b. Failure to Train Claims

Plaintiffs next allege that the Constitutional violations occurred because St. Charles failed to train members of the St. Charles County Regional SWAT Team to respond to civil disturbances, ¶¶ 252, 253, 254, 269, 270, 271, 290, 291, 292. "In limited circumstances, a local

12

government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62 (internal quotation marks and citations omitted). Again, there are no allegations from Plaintiffs claiming that there was any prior pattern of unconstitutional conduct that violated the First, Fourth, or Fourteenth Amendments, nor are there any allegations that any County officials had knowledge of any prior incidents, so the claims that there were constitutional violations for a failure to train similarly fail. *See Jiang*, 156 F. Supp. at 1009 (dismissing plaintiff's claim for failure to train for a lack of "factual allegations to support these assertions apart from the allegations of the police defendants' unconstitutional acts.")

A governmental agency cannot be held liable solely on a theory of vicarious liability or respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-92 (1978). *Monell* established restrictive circumstances for recovery for recovery against governmental entities when it rejected respondeat superior, requiring that an act in question implements or executes an official policy of law or reflects a custom which amounts to de facto policy. The custom, policy, or deliberate conduct must be the moving force behind the constitutional violation. *Luckert v. Dodge County*, 684 F. 3d 808, 820 (8th Cir. 2012). Moreover, a plaintiff must show that the policy itself was unconstitutional. *Id.*

13

Here, each of the claims against the County, Counts II, IV, and VI, should be dismissed because they fail to allege that there were any prior complaints of unconstitutional behavior or other knowledge of such unconstitutional behavior.  They also fail to plausibly allege that the custom or failure to train was the "moving force" behind the alleged constitutional violation.  Each of these deficiencies independently justifies dismissal of each of the Counts against the County.

WHEREFORE, County Defendants pray that Plaintiffs take nothing by this Complaint; that Counts I, II, III, IV, V, and VI of Plaintiffs' Civil Rights Complaint be dismissed with prejudice, for costs of suit herein, including reasonable attorneys' fees; and for such other and further relief as the Court may deem just and proper.

**OFFICE OF THE ST. CHARLES COUNTY COUNSELOR**

*/s/ Holly E. Ragan*

Holly E. Ragan #65118MO
Rory P. O'Sullivan #626388MO
Beverly E. Temple #36095MO
Associate County Counselors
100 N. Third Street
Suite 216
St. Charles, MO 63301
(636) 949-7540
hragan@sccmo.org
rosullivan@sccmo.org
btemple@sccmo.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October, 2016, a true copy of the foregoing was delivered through the Court's Notice of Electronic Filing to:

Bernard J. Rhodes
LATHROP AND GAGE, LLP
2345 Grand Boulevard
Suite 2800
Kansas City, MO 64108

*Holly E. Ragan*